UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════

TREVOR JORDET,

                    Plaintiff,

          v.                                          **DECISION AND ORDER**

                                                      18-CV-953S

JUST ENERGY SOLUTIONS, INC.,

                    Defendant.

═══════════════════════════════

## I.      Introduction

This case alleges that Defendant imposed improper pricing for natural gas upon Plaintiff and the proposed class of Defendant's customers (Docket No. 1, Compl.).  Before this Court is Defendant's Motion to Dismiss (Docket No. 19)[1] the Complaint.

For the reasons stated herein, Defendant's Motion to Dismiss is granted in part, denied in part.

## II.      Background

This is a diversity jurisdiction class action under Pennsylvania common law and statute challenging terms of Defendant's utility supply contract (see Docket No. 1, Compl.).  Plaintiff commenced the action in the United States District Court for the Eastern District of Pennsylvania, but it was later transferred to this District (Docket No. 23).

---

[1] In support of its motion to dismiss, Defendant submits its attorney's Declaration with exhibits (an example of Defendant's contract and Pennsylvania Public Utility Commission's Natural Gas Suppliers List) and Memorandum of Law, Docket No. 20.  In opposition, Plaintiff submits his Memorandum of Law, Docket No. 26.  Defendant filed a timely Reply Memorandum, Docket No. 32.  Plaintiff moved to file a Sur-Reply, Docket No. 35, which this Court granted, Docket No. 38.  He then filed the Sur-Reply, Docket No. 39.

Plaintiff then filed supplemental authorities, Docket Nos. 41 (Gonzales v. Agway Energy Servs., LLC, No. 18-235-MAD-ATB, 2018 WL 5118509 (N.D.N.Y. Oct. 22, 2018)), 42 (Mirkin v. XOOM Energy, LLC, 931 F.3d 173 (2d Cir. 2019)), presenting cases that denied motions to dismiss.

Plaintiff is a Pennsylvanian who was a customer of Defendant (incorporated in California with its principal place of business in Texas) from 2012 through February 2018 (Docket No. 1, Compl. ¶¶ 6, 5).

Pennsylvania deregulated natural gas in 1999 (id., Compl. ¶ 11; see Docket No. 20, Def. Memo. at 2).  The purpose for deregulation was to allow energy supply companies ("ESCOs") to use their natural gas facilities, purchased gas from wholesalers and brokers or purchasing futures contracts at set prices, and other innovations to reduce natural gas costs and pass the savings to consumers (Docket No. 1, Compl. ¶ 12).

Customers only select an ESCO for supplying natural gas while continuing to use the utility for delivery and billing (id. ¶ 13).  The only difference from utility-furnished natural gas is the price of energy supply (id.).  ESCOs' supply rates, including Defendant's, are not approved by the Pennsylvania public service commission (id. ¶ 14).

A.  Pleadings

Plaintiff charges that Defendant entices customers with a low teaser rates and "false promises that it will offer market-based variable rates," then shifts the accounts to variable pricing that are "untethered from changes in wholesale rates" (id. ¶ 15).

In or around 2012, Defendant solicited Plaintiff to change natural gas supplier to Defendant, "representing that [Defendant] would charge a rate lower than the local utility, PECO" (id. ¶ 16).  Defendant's agreement contained a rescissionary period when Plaintiff could change his mind and terminate without penalty (id. ¶ 17).  Defendant charged Plaintiff a fixed, discounted introductory rate for a number of months then converted the account to a variable price (id. ¶ 18).  The agreement represented that the variable price "would be set 'according to business and market conditions, including but not limited to,

the wholesale cost of natural gas supply, transportation, distribution and storage'" (id. ¶ 19).

Plaintiff alleges that a reasonable consumer (like him) would conclude that business and market conditions were the vendor's wholesale costs and the amounts charged by competitors (id. ¶ 20). Instead, Defendant set the variable price higher than Plaintiff's utility (PECO) and Defendant's ESCO competitors (id. ¶¶ 21, 22). Plaintiff contends that Defendant's prices were not competitive market rates; for example, these prices did not fluctuate with changes in natural gas prices (id. ¶¶ 23, 24). Instead, Plaintiff believes that PECO's rates were indicators of the market since it includes supply costs, transportation, distribution, and storage costs (id. ¶ 25). Plaintiff, however, fails to acknowledge that PECO's rates are approved by the public service commission. Even with the advantage of purchasing natural gas from a highly competitive market, Defendant's prices were higher and were not commensurate with PECO's rates (id. ¶¶ 26-30). Plaintiff characterizes these prices as "wildly disparate" (id. ¶ 26). He concedes, however, that Defendant had discretion to set variable prices (id. ¶ 65).

As for market conditions, Plaintiff states that a reasonable customer recognizes the vendor should recoup a reasonable margin on sales of gas (id. ¶ 32), which Plaintiff contends should be the same as other ESCOs and the utility. Because other ESCOs' rates are lower than Defendant's, Plaintiff claims that the profit margin sought by Defendant is in bad faith (id.). Defendant's undisclosed costs in taxes, fees, and assessments Plaintiff deems to be insignificant and not a justification for the disparity in Defendant's pricing from its competitors or PECO (id. ¶ 33). Plaintiff, however, does not state the profit or profit margin of these ESCOs or of PECO.

3

Plaintiff alleges three causes of action.  The First Cause of Action alleges violation of Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL") (id. ¶¶ 44-55), with this claim specifically addressed to a subclass of Pennsylvania residents (id.).  The Second Cause of Action alleges breach of contract (including breach of the implied covenant of good faith and fair dealing, not distinct causes of action under Pennsylvania law) (id. ¶¶ 57-68).  The Third Cause of Action alleges unjust enrichment, as alternative to the Second Cause of Action (id. ¶¶ 70-72).

Plaintiff alleges a class of Defendant's customers who also were charged variable rates for residential natural gas services from April 2012 to the present (id. ¶ 38; see also id. ¶ 39 (subclass of Pennsylvania customers so charged)).  The Second and Third Causes of Action apply to the full class, while the First Cause of Action applies to the broader class and also the subclass of Pennsylvania customers.

B.  Procedural History

Plaintiff filed this action in the United States District Court for the Eastern District of Pennsylvania on April 6, 2018 (Docket No. 1, Compl.).

With consent, Defendant moved to transfer venue to this District (Docket No. 17), see 28 U.S.C. § 1404(a).  There, Defendant argued that the interest of justice supported transfer, in part because of a similar case that then was pending in this Court (Docket No. 18, Def. Memo. at 3, 4-7), see Nieves v. Just Energy New York, No. 17CV561.  The district court for the Eastern District of Pennsylvania granted the transfer (Docket No. 23; see Docket No. 24 (transmitted docket)).

On the same day Defendant moved to transfer, Defendant moved to dismiss (Docket No. 19).  The parties stipulated to set Plaintiff's response to the Motion to Dismiss

to twenty-one days from the adopting Order (Docket No. 22), or by September 4, 2018. Following transfer to this District and upon the parties' stipulation to extend Defendant's time to reply (Docket No. 28), this Court set the deadline for Defendant's reply for October 5, 2018 (Docket No. 29).  After filing a timely Reply (Docket No. 32), Sur-Reply (Docket No. 39), and supplemental authorities from Plaintiff (Docket Nos. 41, 42), the motion to dismiss was deemed submitted without oral argument.

In its Motion to Dismiss, Defendant provides an example of an unexecuted contract (Docket No. 20, Def. Atty. Decl. Ex. 1).  The definitional section there defined "Variable Price" as "the monthly rate that you will be charged per Ccf after expiration of the 12 month Intro Price.  The Variable Price will not change more than once each billing cycle. Changes to the Variable Price will be determined by Just Energy according to business and market conditions."  (Id.)  In Section 5.1, Natural Gas Charges, the contract provides that

> "the Variable Price during the first billing cycle in which the Variable Price is in effect will be equal to the Intro Price.  The Variable Price will not change more than once each monthly billing cycle.  Changes to the Variable Price will be determined by Just Energy according to business and market conditions, including but not limited to, the wholesale cost of natural gas supply, transportation, distribution and storage, and will not increase more than 35% over the rate from the previous billing cycle."

(Id.; see also Docket No. 1, Compl. ¶ 19).

### III.   Discussion

#### A.  Applicable Standards

##### 1.  Motion to Dismiss

Defendant has moved to dismiss the Complaint on the grounds that it states a claim for which relief cannot be granted (Docket No. 19).  Under Rule 12(b)(6) of the

Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007).   To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  This Court deems incorporated here the contract since it is integral to Plaintiff's

claim even if Plaintiff did not incorporate the actual document by reference, Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); 5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357, at 376, 377 (Civil 3d ed. 2004).  Neither party, however, produced Plaintiff's actual contract with Defendant (or any potential class member's contract).  The Complaint alleges key terms of that agreement (Docket No. 1, Compl. ¶ 19), while Defendant's moving papers contains a facsimile of its Natural Gas Customer Agreement for the Natural Gas Rate Flex Pro Program (Docket No. 20, Def. Atty. Decl. ¶ 1, Ex. 1).  Both sides cite to an identical provision about variable prices.  And, absent objection from Plaintiff, this Court will consider the Natural Gas Customer Agreement and its definition of "Variable Price" and its terms for natural gas charges (id., Secs. 1, 5.1).

In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

     2. Pennsylvania Unfair Trade Practices and Consumer Protection Law

Pennsylvania courts construe the Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-3, et seq. (the "UTPCPL"), liberally to effectuate the goal of consumer protection, Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 151 (Pa. Super. Ct. 2012), citing Commonwealth by Creamer v. Monumental

Properties, Inc., 459 Pa. 450, 459, 329 A.2d 812, 816 (1974) (see Docket No. 26, Pl. Memo. at 20).

The UTPCPL creates a cause of action for any person who purchases services primarily for personal, family, or household purposes and thereby suffers ascertainable loss of money as a result of employment  by any person of a method, act, or practice declared unlawful by the Act, 73 Pa. Cons. Stat. § 201-9.2 (Docket No. 26, Pl. Memo. at 19).  Plaintiff has to allege a deceptive act, an ascertainable loss of money or property, that resulted from the use or employment of a method, act, or practice declared unlawful by the UTPCPL, and that plaintiff justifiably relied on the deceptive conduct, Abraham v. Ocwen Loan Servicing, LLC, 321 F.R.D. 125, 154 n.11 (E.D. Pa. 2017) (Docket No. 20, Def. Memo. at 17); Landau v. Viridian Energy PA LLC, 223 F. Supp.3d 401, 418 (E.D. Pa. 2016) (Docket No. 26, Pl. Memo. at 20).

Unlawful methods of competition and unfair or deceptive acts or practices include false advertising, 73 Pa. Cons. Stat. § 201-2(4)(v) ("Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have"), (vii) ("Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another"), (ix) ("Advertising goods or services with intent not to sell them as advertised") (Docket No. 20, Def. Memo. at 17; see Docket No. 26, Pl. Memo. at 19-20). To state a claim for false advertising as the unlawful method, a plaintiff has to allege that defendant's representations were false, that the representations actually deceived or tended to deceive, and the representation likely made the difference in the purchasing

8

decision, Price v. Foremost Indus. Ins., No. CV 17-00145, 2017 WL 6596726, at *9 (E.D. Pa. Dec. 22, 2017) (citing Seldon v. Home Loan Servs., Inc., 647 F. Supp.2d 451, 466 (E.D. Pa. 2009) (Docket No. 20, Def. Memo. at 18). The Third Circuit explains "Material representations must be contrasted with statements of subjective analysis or extrapolations, such as opinions, motives and intentions, or general statements of optimism, which constitutes no more than puffery," EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 872 (3d Cir. 2000). Puffery, however, is not actionable as false advertising under Pennsylvania law, Castrol, Inc. v. Pennzoil Co., 987 F.2d 939 (3d Cir. 1993); Commonwealth v. Golden Gate Nat'l Senior Care LLC, 158 A.3d 203, 215 (Pa. Commw. Ct. 2017), aff'd in part, rev'd in part, 648 Pa. 604, 194 A.3d 1010 (2018) (reversing dismissal of UTPCPL claims). Whether a statement is puffery is a question of fact to be resolved by a fact finder, Commonwealth v. Golden Gate Nat'l Senior Care LLC, 642 Pa. 604, 626-27, 194 A.3d 1010, 1024 (2018).

Unlawful methods also include a generic category of fraudulent and deceptive conduct. To plead this catchall provision for fraudulent or deceptive conduct, 73 Pa. Cons. Stat. § 201-2(4)(xxi) ("Engaging in any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding"), plaintiff needs to allege a deceptive act, that is conduct likely to deceive a consumer acting reasonable under similar circumstances; justifiable reliance based on the misrepresentations or deceptive conduct; and ascertainable loss caused by justifiable reliance, Landau, supra, 223 F. Supp. 3d at 418 (Docket No. 26, Pl. Memo. at 20).

### 3.  Pennsylvania Contract Law and Unjust Enrichment

Briefly, under Pennsylvania law, a breach of contract has these elements:  the existence of a contract, including its essential terms; breach of a duty imposed by the contract; and resultant damages, Gillis v. Respond Power, LLC, No. 14-3856, 2018 WL 3247636, at *4 (E.D. Pa. July 16, 2018) (Docket No. 20, Def. Memo. at 8); Landau v. Viridian Energy PA LLC, 223 F.Supp.3d 401, 408 (E.D. Pa. 2016) (Docket No. 26, Pl. Memo. at 6)  The only element at issue is allegation of breach of the agreement by Defendant.

An implied covenant of good faith and fair dealing is contained in all contracts under Pennsylvania law, and breach of that duty is subsumed in the breach of contract claim, Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d 421, 430 (E.D. Pa. 2015) (quoting Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013)) (Docket No. 26, Pl. Memo. at 16); see Hatchigian v. State Farm Ins. Co., No. 13-2880, 2014 WL 176585, at *7 (E.D. Pa. Jan. 16, 2014) (breach of implied covenant and breach of contract is a single cause of action under Pennsylvania law), aff'd, 574 F. App'x 103 (3d Cir. 2014) (Docket No. 20, Def. Memo. at 8).

Under Pennsylvania law, unjust enrichment is inapplicable when the relationship is founded on a written agreement or express contract, Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (Docket No. 20, Def. Memo. at 24-25 (citing Pennsylvania state decisions)).  "[T]o sustain a claim of unjust enrichment, the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for that party to retain without compensating the provider," Hershey Foods, supra, 828 F.2d at 999;

Torchia on behalf of Torchia v. Torchia, 346 Pa. Super. 229, 499 A.2d 581 (1985).  Unjust enrichment cannot be alleged while alleging a breach of contract unless the validity of the contract itself is actually disputed, Grudkowski v Foremost Ins. Co., 556 F. App'x 165, 170 n.8 (3d Cir. 2014) (Docket No. 32, Def. Reply Memo. at 8).

      B.  Motion to Dismiss Contentions

Defendant argues that Plaintiff fails to allege plausible claims for breach of contract and his other contract claims (Docket No. 20, Def. Memo. at 8-16).  Defendant invokes Pennsylvania's statute of limitations of four years to bar claims prior to April 6, 2014 (id. at 16-17), 42 Pa. Cons. St. Ann. § 5525(a).  Defendant asserts Plaintiff also failed to plead violations of the UTPCPL, namely the asserted violations in advertising and the catchall provision for fraudulent and deceptive conduct (id. at 17-18, 18-21, 21-24).  Defendant also contends that Pennsylvania's gist of the action doctrine prohibits a plaintiff from recasting a contract claim as a tort, as Plaintiff did here in alleging unfair trade practice violations (id. at 23-24; see Docket No. 32, Def. Reply Memo. at 7, citing Pollock v. National Football League, 171 A.3d 773, 77 n.2 (Pa. Super. Ct. 2017)).  Defendant concludes that Plaintiff cannot invoke unjust enrichment while an express contract exists (Docket No. 20, Def. Memo. at 24-25; see also Docket No. 32, Def. Reply Memo. at 8).

Plaintiff contends that he plausibly alleged his three claims (Docket No. 26, Pl. Memo. at 5-25).  The breach of contract here was the manner in which Defendant set variable pricing.  Plaintiff responds that Defendant is "hang[ing] its hat on the implausible assertion that the phrase 'business and market conditions' could mean something other than wholesale costs, competitor pricing, or charges Just Energy incurs to supply natural gas (like transmission costs, which are minimal and steady)" (id. at 3).  Plaintiff argues

that Pennsylvania law requires Defendant, as an ESCO, to disclose to Plaintiff the conditions of variability in its variable pricing, 52 Pa. Code § 62.75(c)(2)(i) (id. at 7).  That provision requires the disclosure of the "conditions of variability (state on what basis prices will vary) including the [ESCO's] specific prescribed variable pricing methodology," id.  Plaintiff counters that the gist of the action doctrine was not applicable, allowing his UTPCPL claim as distinct from his contract claim (id. at 23, citing Landau, supra, 223 F. Supp.3d at 408-19 (E.D. Pa. 2016)).

Plaintiff presents a table comparing Defendant's variable prices to the average Pennsylvania ESCO's billing rate from April 2016-February 2018, with Defendant's variable prices exceeding the competitor's average rates (from U.S. Energy Information Administration table) in a range between 7% (in March-April 2017) to 102% (in August-September 2017) (Docket No. 27, Pl. Atty. Decl. Ex. 7).

Defendant replies that Plaintiff concedes that Defendant did not promise to set rates based upon any single factor and that "business and market conditions" included a variety of nonexclusive factors (Docket No. 32, Def. Reply Memo. at 1), that Plaintiff alleged facts only for one factor in a multiple factor process (id. at 2-3).  Plaintiff fails to plead in particularity (id. at 3 & n.2).  Defendant points out that the Complaint failed to allege competitor ESCO rates (id. at 1, 4-5).  Defendant denies that the difference between its rates and PECO's rates creates claims, thus Plaintiff failed to allege a benchmark for market prices (id. at 1-2).

Next, Defendant argues that Plaintiff has not established a violation of the catchall provision for the UTPCPL (id. at 6-7).  Defendant asserts that Plaintiff's UTPCPL claim violates the gist of the action doctrine (id.; see Docket No. 20, Def. Memo. at 23-24).

12

Finally, Defendant distinguishes the motion to dismiss cases cited by Plaintiff (Docket No. 32, Def. Reply Memo. at 8-10 & nn.9-13).

The Sur-Reply argues that U.S. Energy Information Administration data includes pricing data from Pennsylvania for its ESCOs' rates (Docket No. 39). This, however, does not address the contention that the Complaint does not allege ESCO data was collected in Pennsylvania, Docket No. 32, Def. Reply at 1. As a motion to dismiss it rests solely on the four corners of pleadings where additional materials not integral to Plaintiff's claims were not incorporated by reference, cf. 5B Federal Practice and Procedure, supra, § 1357, at 376.

Plaintiff supplemented with two other cases in which motions to dismiss were denied in what he claims were similar circumstances (Docket Nos. 41, 42). In Gonzalez v. Agway Energy Services, LLC, No. 18-235-MAD-ATB, 2018 WL 5118509 (N.D.N.Y. Oct. 22, 2018) (Docket No. 41, Pl. Supp'al Auth. [Gonzalez]), the plaintiff alleged that Agway Energy misled by representing its variable rates for electricity were based on the cost of acquisition of electricity, transmission and distribution charges, market-related factors, plus applicable taxes, fees, charges, or other assessments, and Agway Energy's costs, expenses, and margins, at *1 (Docket No. 41, Pl. Supp'al Auth. at 1-2). In Mirkin v. XOOM Energy, LLC, 931 F.3d 173 (2d Cir. 2019) (Docket No. 42, Pl. Supp'al Auth. [Mirkin]), the Second Circuit reversed the grant of a motion to dismiss. Plaintiffs alleged that XOOM set its variable rate based on XOOM's "actual and estimated supply costs which may include but not be limited to prior period adjustments, inventory and balancing costs," id. at 175 (Docket No. 42, Pl. Supp'al Auth. at 1). They alleged XOOM breached the contract by charging a variable rate that did not reflect the factors in the contract (id. at 2).

After discussing the contract provision at issue here, this Court will consider (out of order) the common law causes of action of breach of contract and unjust enrichment and conclude with Plaintiff's First Cause of Action under the UTPCPL.

### C.  Variable Price Provision

Each of the three causes of action required Defendant to breach the standard of business and market conditions for imposing variable pricing.   The key clause is Section 5.1, Natural Gas Charges of the Terms and Conditions of the contract, specifically declaring that

> "the Variable Price during the first billing cycle in which the Variable Price is in effect will be equal to the Intro Price.  The Variable Price will not change more than once each monthly billing cycle.  Changes to the Variable Price will be determined by Just Energy according to business and market conditions, including but not limited to, the wholesale cost of natural gas supply, transportation, distribution and storage, and will not increase more than 35% over the rate from the previous billing cycle."

(Docket No. 20, Def. Atty. Decl. Ex. 1).  The contract stated in the definition section that changes in "Variable Price" would "be determined by Just Energy according to business and market conditions" (id.).

This case, like Nieves v. Just Energy New York, No. 17CV561, 2020 WL 6803056 (W.D.N.Y. Nov. 19, 2020) (Skretny, J.), and its variable rate provision, turns on the meaning of the phrase "business and market conditions."   In Nieves, this Court relied upon the Second Circuit's decision in Richards v. Direct Energy Services, 915 F.3d 88 (2d Cir. 2019), and its definition of the terms "business and market conditions," recognizing that these terms (absent restriction or definition) was broad enough to cover the supplier's discretion in setting variable rates or prices, Nieves, supra, 2020 WL 6803056 at *5.   This Court distinguished Jordet's contract from Nieves because it

14

provided some definition of what Defendant considered business and market conditions, id. at *6, from the inclusion of natural gas costs as a factor in rate setting.

> D. Breach of Contract and Breach of Implied Covenant of Good Faith (Second Cause of Action)

As a breach of implied covenant of good faith, Plaintiff concedes that Defendant had unilateral discretion in setting the variable rate (Docket No. 1, Compl. ¶ 65).  As one noted commentator found, "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract," 23 Williston on Contracts § 63:22 (4th ed. 2018); see Richards v. Direct Energy Services, supra,, 915 F.3d at 99.

As a breach of contract, the terms refer to Defendant setting variable prices based upon business and market conditions, defined (in part) to include wholesale natural gas supply costs, transportation, distribution, and storage.  Plaintiff reads this as the extent of what are business and market conditions. The cost of natural gas was a factor in business and market conditions (see id. ¶ 19; Docket No. 20, Def. Atty. Decl. Ex 1, Sec. 5.1), but not the exclusive factor.  While Defendant has some discretion in setting variable rates, the contract gives some direction in that action.

Pennsylvania law, however, requires a natural gas supplier charging a variable rate to disclose the conditions for variation, 52 Pa. Code § 62.75(c)(2)(i).  "Conditions of variability (state on what basis prices will vary) including the [natural gas supplier's] specific prescribed variable pricing methodology," id.  This provision is part of natural gas supply regulation that mandates "all natural gas providers enable customers to make informed choices regarding the purchase of all natural gas services offered by providing

adequate and accurate customer information," provided in "an understandable format that enables customers to compare prices and services on a uniform basis," 52 Pa. Code § 62.71(a). Marketing materials advertising variable pricing has to "factor in all costs associated with the rate charged to the customer for supply service," 52 Pa. Code § 62.77(b)(2).

Plaintiff alleges a breach of contract where Defendant's only stated basis for variable pricing is its natural gas acquisition costs and does not specifically include the other, undisclosed factors Defendant used to set the variable prices.

As in <u>Nieves</u>, Jordet cites to cases in other courts that deny motions to dismiss on similar contract provisions (Docket No. 26, Pl. Memo. at 5 & n.2, 8; Docket No. 41, Pl. Supp'al Auth. [<u>Gonzales</u>]; Docket No. 42, Pl. Supp'al Auth. [<u>Mirkin</u>]). Again, these cases have limited precedential value because each is fact specific, resting upon different contract terms and governing law, <u>see</u> <u>Claridge v. North Am. Power & Gas, LLC</u>, No. 15-1261, 2015 WL 5155934, at *5 (S.D.N.Y. Sept. 2, 2015) (denying dismissal); <u>Nieves</u>, <u>supra</u>, 2020 WL 6803056, at *6 (<u>see also</u> Docket No. 32, Def. Reply Memo. at 8-10). Plaintiff cites (Docket No. 26, Pl. Memo. at 5 n.2) cases analogous to the "business and market conditions" provision for Defendant's variable prices where the provisions in these cases specified wholesale costs as part of the calculation, <u>Landau</u>, <u>supra</u>, 223 F. Supp.3d at 406; <u>Steketee v. Viridian Energy, Inc.</u>, No. 15-585 (D. Conn. Apr. 14, 2016) (Docket No. 27, Pl. Atty. Decl., Ex. 1, <u>Steketee</u> Tr. at 2-3); <u>Sanborn v. Viridian Energy, Inc.</u>, No. 14-1731 (D. Conn. Apr. 1, 2015) (<u>id.</u>, Ex. 3, <u>Sanborn</u> Tr. at 3); <u>Fritz v. North Am. Power & Gas, LLC</u>, No. 14-634 (D. Conn. Jan. 29, 2015) (<u>id.</u>, Ex. 4, <u>Fritz</u> Tr. at 2). In <u>Landau</u>, plaintiff Steven Landau alleged that associates from defendant represented that he would

enjoy lower rates than offered by utility PECO and that he would never have to worry about defendant suddenly increasing rates, Landau, supra, 223 F. Supp. 3d at 406.  The variable rates may fluctuate based upon "wholesale market conditions applicable to the [defendant electric distribution company's] service territory," id.  In Steketee, plaintiff amended the Complaint to allege that the variable rate was based on wholesale market conditions and added that a representative of defendant explained to plaintiff that defendant's variable rate would be based on wholesale market conditions (id., Ex. 1, Steketee Tr. at 2-3).  In Fritz, defendant's variable market-based rate plan "may increase or decrease to reflect price changes in the wholesale power market" (Docket No. 27, Pl. Atty. Decl. Ex. 4, Fritz Tr. at 2).

In Sanborn, the court noted two statements at issue (id., Ex. 3, Sanborn Tr.).  The first statement contained in the contract's terms and conditions provision stated that price may fluctuate from month-to-month "based on wholesale market conditions applicable" to defendant's service area.  The second statement is a Massachusetts required disclosure statement that variable rates comes from a variety of factors including the wholesale market. (Id., Ex. 3, Sanborn Tr. at 3-4.)

Although noting that these cases do not present the actual contract texts, Defendant's contract here is like those supply agreements in these cited cases (see id., Ex. 3, Sanborn Tr. at 3-4).  In all these contracts the variable rates were set by a combination of operating costs, the costs of purchasing fuel, and a "catch-all of other factors" (id., Sanborn Tr. at 3).  As Defendant characterized Sanborn and similar cases, the courts found that the agreements there did not contain specific factors on which the variable rates would be set (Docket No. 32, Def. Reply Memo. at 10 & n.13).  The factors

stated in each of these cases provided a basis for those plaintiffs to allege breaches when the defendants set rates at variance with those standards or consistent with objective supply costs.  Plaintiff plausibly states a claim where "business and market conditions" has some standard that Defendant had to apply in setting its variable pricing but apparently failed to adhere to in its pricing.  Plaintiff also plausibly alleges this breach as natural gas wholesale prices decreased while Defendant's pricing increased (Docket No. 26, Pl. Memo. at 8).  Plaintiff also claims Defendant made representations of savings as compared with utility prices for natural gas (Docket No. 1, Compl. ¶ 16) as was alleged in other cases, Landau, supra, 223 F. Supp.3d at 406; Steketee, supra, (Docket No. 27, Pl. Atty. Decl. Ex. 1, Steketee Tr. at 3).  In general, Plaintiff plausibly alleges a breach of contract claim.

### E.  Statutes of Limitations

Under Pennsylvania law, an action upon a contract "must be commenced within four years," 42 Pa. Cons. Stat. § 5525(a)(1).  For an action for breach of contract, this limitations period begins to run from the time of breach, Baird v. Marley Co., 537 F. Supp. 156, 157 (E.D. Pa. 1982) (citing cases).  With the filing of the Complaint here in April 6, 2018 (Docket No. 1, Compl.), breach of contract claims prior to April 6, 2014, are time barred.  Plaintiff did not argue the timeliness of the April 2012 to April 6, 2014, breach of contract claims (either his or the purported class members).

Plaintiff alleged that he signed with Defendant as his natural gas supplier in 2012 (id. ¶ 21).  Plaintiff cites PECO and Defendant's rates from April 2016 to February 2018 (id. ¶¶ 21-22).  Plaintiff complains the rates charged by Defendant from that period were

higher than PECO's prices (id. ¶¶ 21-22, 24).  Plaintiff also alleges a class of similar consumers of Defendant from April 2012 to the present (id. ¶¶ 38-39).

Under Defendant's contract, Defendant charged Plaintiff a fixed introductory rate for a number of months (id. ¶ 18).  According to the model gas supply contract Defendant produced in its motion (Docket No. 20, Def. Atty. Decl. Ex. 1), that introductory rate lasted twelve months (id., Definition "Variable Price").  Thus, Plaintiff had claims from variable pricing (the alleged breach of contract) from 2013.  Under § 5525, Plaintiff's claims prior to April 6, 2014, are time barred; similarly, the purported class's claims prior to that date also are barred.  Defendant's Motion to Dismiss (Docket No. 19) these untimely claims is granted.

Therefore, Defendant's Motion to Dismiss the Second Cause of Action for breach of contract is granted in part, denied in part.  The motion is granted for untimely breach of contract claims but denied as to the timely claims.

An action under the UTPCPL has a six-year statute of limitations, 42 Pa. Cons. Stat. Ann. § 5527(b); Morse v. Fisher Asset Mgmt., LLC, 206 A.3d 521, 526 (Pa. Super. Ct. 2019).  Plaintiff's Third Cause of Action (and class claims) thus is timely.  This Court below address the substance of Plaintiff's statutory claim.

F.  Unjust Enrichment (Third Cause of Action)

Under Pennsylvania law, a plaintiff cannot allege an unjust enrichment where there is an existing contract, Hersey Foods, supra, 828 F.3d at 999; Umbelina v. Adams, 34 A.3d 151, 162 n.4 (Pa. Super. Ct. 2011) (Docket No. 20, Def. Memo. at 24-25 (citing cases); see also Docket No. 32, Def. Reply Memo. at 8 & n.8 (citing case)).  Plaintiff counters that she is alleging this cause of action in the alternative under Federal

Rule 8(d)(2) (Docket No. 26, Pl. Memo. at 25).  Defendant replies that, under Third Circuit precedent, where an express contract governs, a plaintiff may not plead unjust enrichment, even in the alternative, unless 'the validity of the contract itself is actually disputed'" (Docket No. 32, Def. Reply Memo. at 8, quoting Grudkowski v. Foremost Ins. Co., 556 F. App'x 165, 170 n.8 (3d Cir. 2014)).  Plaintiff expressly alleged that he entered into a valid contract (id., citing Docket No. 1, Compl. ¶ 57).

Rule 8 allows for alternative pleading; the Second Circuit differs from the Third Circuit in this respect, cf. Kaufman v. Sirius XM Radio, Inc., 474 F. App'x 5, 9 (2d Cir. 2012); U.S. ex rel. Kester v. Novartis Pharm. Corp., No. 11 Civ. 8196 (CM), 2014 WL 4401275, at *12 (S.D.N.Y. Sept. 4, 2014).  Under the Erie doctrine, this Court applies Pennsylvania substantive law but federal (here Second Circuit) procedures.  The question thus is whether Plaintiff alleges an unjust enrichment claim separate from his contract claim.

Plaintiff's unjust enrichment claim, however, cannot be separated from the contract.  Plaintiff alleges in the Third Cause of Action (after repeating and realleging prior allegations acknowledging an express contract, Docket No. 1, Compl. ¶¶ 69, 57)), that "by engaging in the conduct described above, Defendant has unjustly enriched itself and received a benefit beyond what was contemplated in the contract, at the expense of Plaintiff and the Class" (Docket No. 1, Compl. ¶ 70, emphasis supplied).  His unjust enrichment claim measures from what Defendant should have been entitled to under the contract.  Since he has (and purported class members had) an express contract with Defendant, Plaintiff cannot also allege an unjust enrichment claim.  Plaintiff has not

alleged that Defendant had a legal duty independent of that contract in setting its variable rates.

Thus, Defendant's Motion to Dismiss (Docket No. 19) Plaintiff's Third Cause of Action is granted.

### G. Pennsylvania Unfair Trade Practices and Consumer Protection Law (First Cause of Action)

Finally, this Court considers dismissal of the First Cause of Action under the Pennsylvania UTPCPL.

As for the element of alleging a deceptive act, Plaintiff alleges deception from the offer made during the initial rescission period, arguing that this offer was a solicitation  in which Defendant represented that variable prices would be determined in accordance with business and market conditions (Docket No. 26, Pl. Memo. at 20-21; Docket No. 1, Compl. ¶ 19).  He also asserts that the deception was the setting of variable prices untethered to wholesale prices or competitively to other ESCOs (Docket No. 26, Pl. Memo. at 21-22).

By alleging paying higher rates than were charged for natural gas by his former utility or other ESCOs, Plaintiff has alleged a loss of money (see Docket No. 1, ¶¶ 53, 50), either the difference he paid Defendant under the variable price from what Defendant ought to have charged had it applied business and market conditions or the difference from what he paid from his utility's rates (Docket No. 26, Pl. Memo. at 22-23).  Plaintiff has not specified either the ESCOs' rates or what Defendant charged from 2013 (after the introductory rate expired) through March 2016 under variable pricing (cf. Docket No. 1, Compl. ¶¶ 21-22) to establish that defendant charged Plaintiff higher rates.

As for Plaintiff's justifiable reliance on Defendant's representation, he alleges deceptive conduct that, but for Defendant's representation about the variable pricing, he would not have contracted with Defendant (id. at 22; Docket No. 1, Compl. ¶¶ 47-53, 66).

As for use of or employment of an illegal method, act or practice, Plaintiff does not allege specific violations of the UTPCPL(see Docket No. 20, Def. Memo. at 17).  Both sides now agree Plaintiff alleges wrongful methods of false advertising (Docket No. 20, Def. Memo. at 17; Docket No. 26, Pl. Memo. at 20-21) and fraudulent and deceitful conduct, falling under the Act's catchall provision, 42 Pa. Cons. Stat. § 201-2(4) (xxi) (Docket No. 20, Def. Memo. at 17; Docket No. 26, Pl. Memo. at 19-20, 21-22).  He claims this deceptive activity refers to false advertising or solicitation and the catchall of prohibited fraudulent or deceptive conduct.  Defendant refutes two theories of deception contending that there is no allegation of false advertising (Docket No. 20, Def. Memo. at 18-21) or fraudulent conduct to meet the catchall provision (id. at 21-23).

1.  False Advertising

a.  Oral Representation

Plaintiff states that Defendant made a representation that, if he joined Defendant, his natural gas rates would be less than PECO's rates (Docket No. 1, Compl. ¶ 16).  After agreeing, Plaintiff argues that he was given a three-day rescission period before the contract went into effect, thus deeming this to be a solicitation regulated by the UTPCPL (Docket No. 26, Pl. Memo. at 20-21).  Plaintiff believed that the offer of the proposed agreement represented that Defendant's variable prices would be competitive with other ESCOs, but the actual rates were not (id. at 21).

Defendant argues that Plaintiff fails to allege violation for false advertising (Docket No. 20, Def. Memo. at 17). Defendant claims that the Complaint does not allege a misrepresentation, deception or fraudulent conduct (id.) or make promises regarding the variable pricing (id. at 5-6). The Complaint, however, alleges that Defendant represented to Plaintiff that Defendant would charge lower rates than PECO, his natural gas utility (Docket No. 1, Compl. ¶ 16). Defendant counters that this allegation is parol evidence that is barred pursuant to Pennsylvania law (Docket No. 20, Def. Memo. at 6, 20, 22), see Scardino v. American Int'l Ins. Co., No. CIV.A.07-282, 2007 WL 3243753, at *7-8 (E.D. Pa. Nov. 2, 2007). Defendant denies any representation that under the agreement Defendant would beat utility prices or guarantee financial savings (id.; see Docket No. 20, Def. Atty. Decl., Ex. 1, model contract, at 1, Customer Disclosure Statement).

To allege false advertising as the unlawful method under the Act, Plaintiff has to allege that Defendant's representations were false. Defendant raises threshold objections that the oral representation is barred by Pennsylvania's parol evidence rule and that the agreement is not an advertisement. Courts in Pennsylvania have granted motions to dismiss because of the parol evidence rule, Bernardine v. Weiner, 198 F. Supp. 3d 439, 441, 443-44 (E.D. Pa. 2016). Pennsylvania law bars parol evidence and fraud in the inducement claim based on parol evidence, id. Here, Plaintiff alleges that Defendant represented that its rates would be less than PECO, inducing Plaintiff to sign up. This is parol evidence and fails to state a claim. Even if this oral representation remains, Plaintiff has not alleged that variable pricing after the introductory price expired.

Furthermore, the Eastern District of Pennsylvania held that representations by individual employees or agents of a defendant are not advertisements under the UTPCPL

and cannot constitute a violation of that act, Seldon, supra, 647 F. Supp. 2d at 466; see Thompson v. The Glenmede Trust Co., No. 04428, 2003 WL 1848011, at *1 (Pa. Ct. Com. Pl. Feb. 18, 2003).   The court also noted that 73 Pa. Cons. Stat. § 201-2(4)(ix) false advertising requires allegation of intent, Seldon, supra, 647 F. Supp.2d at 466; Karlsson v. FDIC, 942 F. Supp. 1022, 1023 (E.D. Pa. 1996), aff'd, 107 F.3d 862 (3d Cir. 1997). Plaintiff here, however, has not alleged that Defendant intentionally engaged in false advertising; the Complaint merely alleges that Defendant intentionally concealed its pricing strategy while representing that it would base variable prices on business and market conditions (cf. Docket No. 1, Compl. ¶ 50).

Finally, Plaintiff's alleged representation is threadbare, merely alleging that Defendant's unnamed representative solicited Plaintiff representing lower rate than PECO (Docket No. 1, Compl. ¶ 16).   This is similar to the allegations rejected by the United States District Court for the Western District of Pennsylvania in Corsale v. Sperian Energy Corp., 412 F. Supp. 3d 556, 563 (W.D. Pa. 2019).   In Corsale, plaintiffs alleged that Sperian Energy Corp. advertised that it offered "competitive" rates; the Western District of Pennsylvania held this was threadbare and the vague claim of competitive rates was nonactionable puffery, id.   Therefore, Defendant's motion to dismiss the First Cause of Action for claims under Complaint ¶ 16 is granted.

      b.    Cancellation   Provision   Making   Contract   an Advertisement

The second representation or solicitation alleged is the offered agreement during a recessionary period (see Docket No. 1, Compl. ¶ 17).  Plaintiff argues that its terms was an advertisement until it came into effect when Plaintiff did not reject the agreement. According to the model Natural Gas Customer Agreement furnished by Defendant, the

customer could cancel that agreement up to three business days after receipt of the agreement without penalty (Docket No. 20, Def. Atty. Decl. Ex. 1, at 1).  The agreement repeats in all capital letters "THE CUSTOMER MAY RESCIND THIS AGREEMENT AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER RECEIPT OF THIS AGREEMENT WITHOUT PENALTY" (id. (emphasis in original)).

Plaintiff argues that there was thus no contract for that three-day period because of his ability to rescind without penalty, concluding that the document he received was a solicitation or advertisement until those three days passed (Docket No. 26, Pl. Memo. at 21).  Plaintiff cites for example In re Estate of Rosser, 821 A.2d 615, 623 (Pa. Super. Ct. 2003), where whether a contract had consideration or mutuality of obligation was necessary to determine if a decedent's conveyance could be voided by the survivors.  To the contrary, Plaintiff and Defendant had mutuality of obligations even during the three-day rescissionary period.  Plaintiff had to act to cancel the contract within those three days to terminate the agreement without penalty while Defendant still had to supply natural gas.  Plaintiff has not cited other cases where the UTPCPL applied to the recessionary period of a contract by deeming that to be a solicitation or advertisement. He also has not cited authorities that render an agreement like the one in this case illusory merely because a party can opt out after a brief initial period.  Pennsylvania law recognizes binding contracts that contain cancellation provisions, e.g., Samuel Williston, Williston on Contracts § 7:13 (2020), recognizing valid agreement with provision that one party may cancel provided the method to do so is limited.  Reservation, for example, of right to cancel upon written notice or after a definite period after giving notice, "there is consideration for the promisor's promise, despite the fact that the promisor may in fact be

able to avoid its obligation," id.; see also Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 A. 973 (1902).  That an agreement contains this initial cancellation provision does not invalidate it as a contract and render it into a mere offer.

This Court has not found precedent under the UTPCPL that considered an agreement as an advertisement.  This Court agrees with the Eastern District of Pennsylvania in Price, supra, 2018 WL 1993378, at *5 (see also Docket No. 20, Def. Memo. at 21), that "to the extent Plaintiffs rely on the sales agreement itself for their claim, that claim is duplicative of the breach of contract claim."  The distinction Plaintiff argues from the lack of a recessionary period makes little difference; as discussed above, Plaintiff entered the contract with a recessionary period.  A claim that this agreement is also advertising merely alleges a duplicative claim under common law and the UTPCPL.

Thus, Defendant's Motion to Dismiss (Docket No. 19) so much of the Complaint alleging the contract was advertising in violation of the UTPCPL is granted.

### 2. UTPCPL's Catchall for Fraudulent and Deceptive Practices and Federal Rule 9 Pleading Requirements

Defendant argues that Plaintiff has not alleged fraud and deception under the UTPCPL with specificity as required by Federal Rule of Civil Procedure 9(b) (Docket No. 20, Def. Memo. at 22-23).  The parties dispute whether Plaintiff alleged fraud and thus under Rule 9(b) needed to plead fraud with particularity.  Defendant argues that violation of the UTPCPL needs to be alleged with particularity (Docket No. 20, Def. Memo. at 18 n.4, citing, e.g., Dolan v. PHI Variable Ins. Co., No. 3:15-CV-01987, 2016 WL 6879622, at *5 (M.D. Pa. Nov. 22, 2016) (Rule 9(b) heightened specificity extends to all claims that sound in fraud, citations to District of New Jersey case omitted).  The court in

Dolan held that Rule 9(b) applied to state fraud claims including alleged violations of the UTPCPL, id.

Plaintiff counters that under Landau, supra, 223 F. Supp. 3d at 418, pleading under the UTPCPL need not be particularized (Docket No. 26, Pl. Memo. at 20 n.8).  The court in Landau considered the amendment to the catchall provision adding deceptive conduct and the court held that pleading deceptive conduct only required Rule 8(a) normal pleading and not the heightened fraud pleading of Rule 9(b), 223 F. Supp. 3d at 418.

An Erie doctrine issue arises whether Pennsylvania law (here, as construed by federal courts in that Commonwealth) applies or does this Court's (or the Second Circuit's) procedural caselaw applies on the particularity issue.  Both sides here cite federal decisions from Pennsylvania.  Under the Erie doctrine, while state law governs the substantive issues, procedural law in diversity cases is federal procedures, e.g., Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 182 n.14 (2d Cir. 2015); NCC Sunday Inserts, Inc. v. World Color Press, Inc., 692 F. Supp. 327, 330 (S.D.N.Y. 1988) (applying Rule 9(b) to Connecticut Unfair Trade Practices Act claim, "while state law governs substantive issues of state law raised in federal court, it is federal law which governs procedural issues of state law raised in federal court, and Rule 9(b) is a procedural rule").  Where this Court or the Second Circuit has ruled on a procedure, this Court is bound to apply it.  Absent that precedent, this Court reviews the decisions of other districts and may adopt its rationale.

As of 2016, the Second Circuit has not held that Rule 9(b) applies to similar state unfair trade practices laws, see L.S. v. Webloyalty.com, Inc., 673 F. App'x 100, 105 (2d Cir. 2016) (summary Order), where the court noted that Connecticut law did not require

a plaintiff to allege or prove fraud for violations of the Connecticut Unfair Trade Practices Act (or "CUTPA"), see Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp., 245 Conn. 1, 43, 717 A.2d 77, 100 (1998).  Acknowledging there that a CUTPA violation may overlap with common law claims, the Second Circuit and Connecticut courts recognize that "to the extent that they diverge, dismissal of a plaintiff's CUTPA claim is not warranted unless the facts as alleged do not independently support a CUTPA claim," L.S., supra, 673 F. App'x at 105.  The Second Circuit then stated "we are doubtful, even assuming Rule 9(b) applies to certain CUTPA claims, Rule 9(b)'s particularity requirement would apply to a CUTPA claim premised" on the facts alleged, id., concluding that those alleged facts nevertheless would satisfy Rule 9(b) pleading requirements, id.

Magistrate Judge Hugh Scott of this District once found that an allegation under the New York General Business Law was not pled, Navitas LLC v. Health Matters Am., Inc., No. 16CV699, 2018 WL 1317348, at *19-20 (W.D.N.Y. Mar. 14, 2018) (Report & Rec), but did not require that pleading with particularity under Rule 9(b).  There, co-defendant Bio Essentials asserted crossclaims for fraud and presumably for violation of New York General Business Law § 349 against defendant Health Matters America but not expressing alleging the claim under that statute, id. at *19, 3.  Health Matters then moved to dismiss some of the crossclaims, including those alleging fraud and unfair business practices, id. at *4, 14-15.  In two crossclaims, Bio Essentials alleged Health Matters false statements damaged Bio Essentials either as unfair trade practices or as fraudulent statements, id. at *14-15.  Given Bio Essentials' relatively vague pleading, Health Matters argued that the fraud and unfair trade practice crossclaims violated Rule 9(b), id. at *15-16.  Bio Essentials argued that only its fraud crossclaim required

pleading under Rule 9(b), id. at *17.  Magistrate Judge Scott then applied Rule 9(b) to the fraud crossclaim while recommending dismissal of the unfair practices crossclaims for failure to  allege the elements of General Business Law § 349 claims, id. at *17-19, quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20,24-25, 623 N.Y.S.2d 529, 532 (1995).

Both L.S. and Navitas skirt applying Rule 9(b) particularity for state unfair trade practices actions, recognizing that they are distinct from common law fraud claims that would require particular pleading.  Deceptive acts under the UTPCPL's catchall provision has been held not to be fraud and could be plead under Rule 8(a), Landau, supra, 223 F. Supp. 3d at 418.  But the UTPCPL catchall refers to "engaging in fraudulent or deceptive conduct," 73 Penn. Cons. Stat. § 201-2(4)(xxi), which includes fraud.  Therefore, so much of Plaintiff's catchall claim that alleges fraudulent conduct requires particular allegation under Rule 9(b), see 5A Charles A. Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice and Procedure § 1297, at 63-64 (Civil 2018).

Even if Rule 9(b) is not required for allegations under the UTPCPL, Twombly and Iqbal require pleading details to allege a plausible claim, see Price v. Foremost Indus., Inc., Civil Action No.17-00145, 2018 WL 1993378, at *5 (E.D. Pa. Apr. 26, 2018) (plaintiffs' alleging UTPCPL violations stated misrepresentations that were "devoid of the details that Twombly and Iqbal require").

The allegations here, however, do not meet the plausibility standard of Twombly and Iqbal without regard to Rule 9(b) particularization, id.  It is not clear what the deceptive act is here.  The agreement ultimately gave Defendant discretion to set its variable pricing with one stated factor but allowing discretion to set it based upon "business and market

conditions".  Plaintiff alleges his understanding of what "business and market conditions" is (or ought to have been) but he does not allege that Defendant represented that this understanding was what it meant.

Defendant's Motion to Dismiss (Docket No. 19) the First Cause of Action under the UTPCPL is granted.

### H.  How This Case Differs from Nieves v. Just Energy New York Corp.

Since Plaintiff's counsel in this case also represented Malta Nieves and the same defense counsel represent the Just Energy Defendants in both cases, a comparison of the result here and in Nieves is in order.  Defendant moved to transfer this case to the Western District of New York because of the then-pending Nieves action was before this Court.  Factually, the cases are distinguishable.  First, the language of the variable terms differs between this case and Nieves.  In Nieves, Just Energy New York ("Just Energy") set the variable electricity rate solely based on "business and market conditions" without that phrase being defined or giving specific examples of those conditions.  This Court held that Just Energy had unfettered discretion in setting these rates without reference to wholesale electricity rates or competitors' charges, Nieves, supra, 2020 WL 6803056, at *4.  Malta Nieves did not allege representations by Just Energy that she would pay less than the electrical utility; Nieves merely claimed that Just Energy represented that she would save money, id., at *2.

Second, Nieves arose in New York and argued breach of contract and other claims under New York law.  Pennsylvania law expressly required natural gas suppliers to specify the basis for variable pricing while New York law does not.  Third, the energy supplied differed, with Nieves involving electricity.  There was no express breakdown of

the cost of electrical supply, transmission, or storage as was in Defendant's gas supply contract with Jordet in this case.   Fourth, both cases involve different corporate Defendants that might be affiliates but each Defendant was incorporated and had principal place of business in different jurisdictions.

The crucial difference between <u>Nieves</u> and this case is the variable terms in the supply contracts.  Defendant here listed some (but not all) elements toward establishing business and market conditions in variable pricing, whereas Just Energy in <u>Nieves</u> has more open concept of that phrase "business and market conditions."

### IV.    Conclusion

Plaintiff's understanding of what a reasonable customer might expect is not the terms of the contract he signed with Defendant.  That agreement gave Defendant  some discretion to set variable rates, but expressly included natural gas costs as factors for business or market conditions.   As summarized in wholesale gas costs (as Plaintiff argues), this is an element of Defendant's pricing but not necessarily the entirety of the business and market conditions.

Deregulation of natural gas supply rates moved the marketplace from regulated monopoly (rates set by PECO, for example, as approved by the Pennsylvania regulators) to those set in the marketplace.  Defendant, as an ESCO, did not have its rates set by a public agency or by its competitors (including utilities like PECO).  But Pennsylvania law in establishing deregulation required natural gas suppliers to furnish information for the basis of their pricing to have informed consumers.

Defendant's Motion to Dismiss (Docket No. 19) is granted in part, denied in part. Defendant's Motion to Dismiss the First Cause of Action for violation of the Pennsylvania

Unfair Trade Practices and Consumer Protection Law is granted for both the advertising and fraudulent and deceptive conduct violations.  Defendant's Motion to Dismiss (id.) the Second Cause of Action for breach of contract is denied.  Its Motion to Dismiss (id.) the Third Cause of Action for unjust enrichment is granted.  Defendant shall answer the surviving Second Cause of Action within fourteen (14) days after entry of this Decision and Order.  This Court then will refer this case to a Magistrate Judge for conducting pretrial proceedings.

## V.    Orders

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 19) is GRANTED in part, DENIED in part.  Defendant shall answer the surviving Causes of Action within fourteen (14) days after entry of this Decision and Order.  This Court will refer this case to a Magistrate Judge for pretrial proceedings.

SO ORDERED.


Dated:        December 7, 2020
              Buffalo, New York


                                          s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                       United States District Judge